UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PEORIA DAY SURGERY CENTER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OSF HEALTHCARE SYSTEM, d/b/a )<br>SAINT FRANCIS MEDICAL CENTER )<br>Defendant. ) | Case No. 06-1236 |

**ORDER**

This matter is now before the Court on Defendant's Motion to Dismiss Counts VIII though XI of the Complaint. For the reasons set forth below, the Motion [#12] is DENIED.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as four of the claims arise under the Sherman Act, 15 U.S.C. §1, et seq.

**BACKGROUND**

Unless otherwise noted, the following summary is taken from the allegations in Plaintiff's Complaint, which are presumed to be true for the purposes of resolving this Motion. *See* Fed. R. Civ. P. 12(b)(6). Plaintiff is an ambulatory surgery center with 42 physician shareholders and approximately 80 physicians on staff, and is located in Peoria, Illinois. Defendant is a non-for-profit hospital also located in Peoria. In addition to its main facility, Defendant maintains an OSF St. Francis Outpatient Surgery Center, which provides ambulatory surgical procedures. Together, Defendant and its Outpatient Surgery Center performed approximately 14,600 ambulatory surgeries in 2004 (about 40% of the market), while Plaintiff

performed 4,779 ambulatory surgeries (about 14% of the market).  Even though there are other free-standing ambulatory surgery centers in the Peoria area as well as other large hospitals, Plaintiff is Defendant's most significant competitor for the provision of ambulatory surgical services.

Almost immediately upon Plaintiff's entry in to the market in 1990, Plaintiff obtained a contract to treat the health plan beneficiaries of Caterpillar, the largest employer in the Peoria area.  Because of this and other successes by the Plaintiff, Defendant has engaged in several tactics to marginalize and eliminate Plaintiff as a competitor.

First, Defendant has interfered with the contractual relationship between Plaintiff and Caterpillar.  In the mid-1990s, Defendant lowered its rates to Caterpillar and entered into a partially exclusive arrangement with Caterpillar for both in-patient and ambulatory surgery services.  As a result of this contract, Plaintiff lost its blanket in-network status and became an out-of-network provider for Caterpillar beneficiaries for all services except ambulatory urology surgeries.

Plaintiff's split status as an in-network for urology services and out-of-network for other services continued until 2004, when Plaintiff sought to recruit a group of orthopedic surgeons who also practiced with Defendant.  In retaliation, Defendant forced Caterpillar to terminate Plaintiff's status as a limited in-network facility in May 2004.  Making it clear that Defendant controlled Caterpillar's decision, Caterpillar told Plaintiff to discuss the matter with Defendant, and if Defendant agreed to Caterpillar re-establishing Plaintiff in its network, Caterpillar would do so.  Plaintiff met with Defendant and Defendant refused.

Despite its conversion to a total out-of-network provider to Caterpillar employees, Plaintiff continued to receive Caterpillar beneficiaries as patients.  In March 2006, Caterpillar

informed Plaintiff that as of April 1, 2006, it would cease paying for any services Plaintiff provided to Caterpillar beneficiaries, depriving Plaintiff of all revenue from Caterpillar.  Plaintiff claims that Caterpillar's announced reason for this decision – that Plaintiff had failed to collect co-payments and deductibles from Caterpillar patients – was pretextual, and that Defendant had pressured Caterpillar to stop making any payments to Plaintiff.

Defendant's latest effort to dominate the market for ambulatory surgical services in the Peoria area is the signaling of its intent to enter into exclusive provider agreements with United Healthcare and Blue Cross-Blue Shield ("BCBS"), the two remaining major payers of health care services in the area.  In addition, the John Deere Health Plan, historically the third or fourth largest payer of health care services in the Peoria area, has been recently acquired by United Healthcare.  During a March 2006 meeting between representatives of Plaintiff and Defendant, Defendant's representative confirmed that Defendant is negotiating exclusive provider contracts with United Healthcare and BCBS.  Plaintiff claims that if Defendant is successful, Plaintiff will likely be eliminated as a competitor, other smaller independent private health plans will suffer, large governmental payers, such as Medicare, will pay more for ambulatory surgery services, and the Peoria area will lose the principal benefit of market competition—higher quality care for lower prices.

Plaintiff's eleven-count Complaint seeks orders temporarily and permanently enjoining Defendant from entering into agreements with either United Healthcare (including John Deere) or BCBS that grant Defendant exclusive or partially exclusive rights to provide ambulatory surgical services in the Peoria area, as well as damages it has suffered as a result of the Defendant-induced breach of contract by Caterpillar.  Counts I, II, III, IV allege that Defendant's conduct violates various provisions of the Sherman Antitrust Act.  Counts V, VI, and VII allege

3

that Defendant's conduct violates various provisions of the Illinois Antitrust Act.  Counts VIII, IX, X, and XI of the Complaint claim Interference with Plaintiff's Contractual Relations with Caterpillar, United Healthcare, BCBS, and John Deere, respectively.

Defendant has moved to dismiss all of the state-law interference with contractual relationship claims, Counts VIII, IX, X and XI.  Plaintiff has filed its response, and this Order follows.

## DISCUSSION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief.  *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993).  Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are taken in favor of the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

## I. Count VIII

Count VIII of Plaintiff's Complaint bears the heading "Interference with Contractual Relations with Caterpillar."  A claim for tortious interference with contract requires (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by

defendant's wrongful conduct,  and (5) damages.  *Fieldcrest Builders, Inc. v. Antonucci*, 724 N.E.2d 49 (Ill. App. 1999); *Int'l Marketing, Ltd. v. Archer-Daniels Midland Co*., 192 F.3d 724, 731 (7th Cir. 1999).

Defendant argues that the Court should dismiss Count VIII because Plaintiff has failed to allege the fourth element—a breach.  While Plaintiff has not used the word "breach" in its claim, Plaintiff has incorporated the following allegations into Count VIII:

> St. Francis also forced Caterpillar to cancel its contract with Peoria Day. Caterpillar refuses to pay for any services that Peoria Day provides to members of its health plans. Compl. at ¶ 9.
>
> Peoria Day secured a contract with Caterpillar to be an in-network facility for Caterpillar beneficiaries.  Compl. at ¶ 36.
>
> St. Francis forced Caterpillar to terminate Peoria Day's status as a limited in-network facility.  In May 2004, shortly after Peoria Day's discussions with these surgeons intensified, Caterpillar told Peoria Day that it was revoking Peoria Day's in-network status.  Compl. at ¶ 40.
>
> Caterpillar said it would not pay Peoria Day for services or reimburse beneficiaries or participants for amounts they pay to Peoria Day, depriving it of all revenue from Caterpillar.  Compl. at ¶ 46.

These allegations, when read liberally and in the light most favorable to the Plaintiff, as required by the Federal Rules of Civil Procedure, clearly put Defendant on notice of the allegations against it.  While Plaintiff may have been prudent to use the precise term "breach" in its allegations, the above paragraphs, when construed broadly, make out the "breach" element in a claim for damages resulting from tortious interference with contract.  Whether Plaintiff will likely prove any of the elements of the tort, including an actual breach of contract, is irrelevant at this stage.  Accordingly, Defendant's Motion to Dismiss County VIII is denied.

## II. Counts IX, X, and XI

Counts IX, X, and XI of the Complaint also bear the heading "Interference with Contractual Relations" with United Healthcare, Blue Cross Blue Shield, and John Deere, respectively. Defendant insists that each of these Counts must fail for the same reason: Plaintiff alleges that Defendant *seeks* to intentionally interfere with Plaintiff's contractual relationship with each of these defendants, and that *should* Defendant be successful, Plaintiff will suffer damages. Defendant argues, "[Plaintiff] has not alleged, and cannot allege, that [Defendant] has entered into an exclusive contract with any of these three insurers," and therefore Plaintiff has not stated a claim because it is missing the fourth and fifth elements—breach and damages.

The Court agrees that Plaintiff has not alleged a past breach and resulting damages, nor can it apparently do so at this time, according to the Complaint. However, Plaintiff's complaint makes clear that it does not seek *damages* for any tortious interference with its contracts with United Healthcare, BCBS, and John Deere. Rather, Plaintiff seeks prospective relief in the form an injunction enjoining Defendant from inducing United Healthcare, BCBS, and John Deere to breach their contracts with Plaintiff. Under the law of Illinois and other jurisdictions, inducing breach of contract is a proper subject for injunctive relief. *See Norman v. Local No. 4, Int'l Bro. of Elec. Workers*, 189 N.E.2d 687, 689 (Ill App. 1963) (upholding the trial court's entry of a preliminary injunction enjoining a union from distributing handbills encouraging the public to cease patronizing the businesses that advertised with the plaintiff radio station and stating, "[i]t is the law of this state that inducing breach of contract is a tortious act for which damages may be recover and is a proper subject for injunctive relief   Doubtless the trial court allowed the injunction in reliance on these principles, as the law of this state and many others."); *see also Fairbanks, Morse & co v. Texas Elec. Service Co.*, 63 F.2d 702, 704 (5th Cir. 1933) ("It must be

6

conceded that, generally speaking, it is tortious for one without justification to induce another to breach a contract, and that it is quite generally assumed almost as a matter of course than an injunction will be granted when the breach of valid contracts is, without legal justification, being or about to be, induced.").

In *American Para Professional Systems, Inc. v. LabOne, Inc.*, 175 F. Supp. 2d 450 (E.D.N.Y. 2001), the court considered a 12(b)(6) motion to dismiss the plaintiff's complaint for failure to state a claim for tortious interference with contract, which has the same key elements under New York law as under Illinois law. The plaintiff and defendant were business competitors, and the plaintiff sought an injunction to stop the defendant from continuing its attempts to encourage those who contracted with the plaintiff to breach those contracts and instead obtain services from the defendant. *Id*. 453-54. Among the allegations were, "to the extent that [the defendant] succeeds in its claimed scheme to pirate [the plaintiff's] affiliates thus destroying that network, [the plaintiff] will lose New York based customers." *Id*. at 457.

The Court noted that "[the plaintiff], of course, need not wait for the threatened harm to occur before seeking judicial assistance . . . . the purpose of the injunctive relief is to prevent wrongs reasonably apprehended in the future," and ultimately denied the 12 (b)(6) motion, concluding that "complaint sets for the necessary elements for injunctive relief based on the tortious interference with contract assertion of [the plaintiff]" *Id*. at 457-58; *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs.").

Here, the above cases make clear that Plaintiff's failure to allege breach and damages is certainly not fatal to her claim for injunctive relief based on tortious interference with contract.

7

The Complaint's allegations sufficiently describe "wrongs apprehended in the future." *Id*. at 457.  Therefore, Defendant's Motion to Dismiss Counts IX, X, and XI is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Counts VIII though XI of the Complaint [#12] is DENIED.

ENTERED this 18th day of January, 2007.

s/Michael M. Mihm____
Michael M. Mihm
United States District Judge

8