**E-FILED**
Friday, 27 March, 2009 02:43:45 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION**

Peoria Day Surgery Center,

Plaintiff,

v.

OSF Healthcare System, an Illinois not-for-profit corporation d/b/a Saint Francis Medical Center

Defendant.

No. 06-1236

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's motion for leave to file a second amended complaint (d/e 169) and Defendant's response (d/e 175). For the reasons below, the Court recommends that the motion be allowed in part and denied in part.

**Background**

Plaintiff Peoria Day Surgery Center ("Peoria Day") is an outpatient surgical center providing ambulatory surgeries. Defendant OSF Healthcare System d/b/a St. Francis Medical Center ("St. Francis") is one of the largest hospitals in the Peoria area and is the largest provider of ambulatory surgeries in the Peoria area. (Amended Complaint ¶¶ 1-2). "Peoria Day is

St. Francis' most significant competitor for the provision of ambulatory surgical services." (Amended Complaint, d/e 78 ¶ 22).

On September 13, 2006, Peoria Day filed a Complaint for injunctive relief, alleging that St. Francis had engaged and continued to engage in anticompetitive behavior in order to drive Peoria Day out of business. The Complaint sought to enjoin St. Francis from entering into exclusive provider agreements with Blue Cross-Blue Shield and United Healthcare, and sought damages for interfering with Peoria Day's relationship with Caterpillar, Inc..

On November 28, 2006, scheduling deadlines were set. (Scheduling Order, d/e 20). Amended pleadings were due September 1, 2007, with fact discovery due December 31, 2007, and expert discovery due June 15, 2008. Discovery disputes ensued regarding electronically stored information, which were resolved by the Court on May 1, 2007. (5/1/07 Court Order, d/e 56). Fact discovery was extended to February 1, 2008, and then to June 1, 2008, and then to July 1, 2008, in response to the large amount of electronically stored information that needed to be produced by St. Francis. (8/1/07 Order, d/e 64; 9/5/07 Text Order; 10/24/07 Text Order).

The deadline to amend pleadings was also extended to November 1, 2007, and then to December 1, 2007. (9/5/07 Text Order; 10/24/07 Text Order).

On November 26, 2007, the Court allowed Plaintiff to file its unopposed Amended Complaint (d/e 78). The Amended Complaint dropped claims relating to Blue Cross Blue Shield and United Healthcare, and dropped the antitrust claims for exclusive dealing and monopolization. The Amended Complaint added a state tort claim for interference with Peoria Day's prospective economic advantage with beneficiaries of Caterpillar's health plans. (Amended Complaint, d/e 78, ¶ 86).

On January 14, 2008, the court granted the parties' joint motion to extend expert discovery deadlines in light of the extension of fact discovery. (1/14/08). Expert discovery was extended to October 31, 2008; fact discovery remained due by July 1, 2008. Another discovery dispute ensued regarding over 100 subpoenas served by St. Francis on physicians who were shareholders of or who had privileges at Peoria Day. The Court ruled on the motions to quash the subpoenas on March 17, 2008. (3/17/08 Order, d/e 115).

On July 7, 2008, the Court granted the parties' joint motion to extend expert discovery deadlines, with expert discovery to be completed by

November 30, 2008. The fact discovery deadline, which had passed a few days earlier on July 7, 2008, was not affected. In August 2008, expert discovery was again extended, to December 8, 2008, by joint motion. (8/19/08 Text Order).

On October 21, 2008, Peoria Day filed an emergency motion to re-open fact discovery and stay all other proceedings (d/e 155). Peoria Day sought to re-open fact discovery to explore a letter it had received in early October 2008, from Humana, Inc., terminating Peoria Day's contract with Humana's ChoiceCare Network. According to Peoria Day's investigation, Humana had terminated Peoria Day's contract as a condition of Humana's purchase of OSF Health Plans, Inc..[1] Peoria Day contended that "these new facts are highly relevant to Peoria Day's contentions in this litigation; namely that OSF has engaged in anticompetitive conduct—and continues to do so—by interfering with Peoria Day's contractual relationships with payers for healthcare services . . . . These new facts are highly probative of

[1]Peoria Day asserts that OSF Health Plans was a subsidiary of the defendant in this case, OSF Healthcare System, Inc.. (d/e 155, p. 2 n.2). Defendant counters that OSF Health Plans, Inc., was a subsidiary of OSF St. Francis, Inc., which in turn is a subsidiary of Defendant, OSF Healthcare System, Inc. (d/e 175 n.1).

OSF's intent to marginalize or eliminate Peoria Day as a competitor." (d/e 155 p.4).

In its motion to re-open fact discovery, Peoria Day sought "limited discovery: production of the contract between OSF and Humana and related documents, the identification of the key participants in the negotiations of the contracts, and the likely handful of depositions of the key negotiators for OSF and Humana." (d/e 155, p. 4). The Court allowed the motion, extending fact discovery to March 1, 2009 "for the LIMITED PURPOSE of conducting discovery concerning the new issues raised by Plaintiff . . . ." (11/19/08). The Court did not extend the deadline for filing amended pleadings, nor did Peoria Day ask for an extension. Expert discovery was subsequently extended to December 31, 2008. (12/3/08 Text Order). The deadlines for taking the depositions of Bryan Zowin and Ira Rosenberg were extended to March 11, 2009. (2/10/09 Text Order).

On February 23, 2009, Peoria Day filed the motion now before the court, seeking leave to file a "Second Amended Complaint to Conform the Pleadings to Discovery". (d/e 169, p. 1). The relevant portions of the Second Amended Complaint are discussed below.

## Analysis

The First Amended Complaint sets forth the following counts:

**Count I: Group Boycott, Sherman Act**

**Count II: Tying Arrangement with Caterpillar, Sherman Act**

**Count III: Group Boycott, Illinois Antitrust Act**

**Count IV: Tying Arrangement with Caterpillar, Illinois Antitrust Act**

**Count V: Interference with Contractual Relations with Caterpillar**

**Count VI: Interference with Peoria Day's Prospective Economic Advantage with Caterpillar**

(Amended Complaint, d/e 78).

The Second Amended Complaint contains extensive changes from the First Amended Complaint, as demonstrated by the redline version submitted by St. Francis. (d/e 175, Ex. 1). Many of those changes are not substantive and serve to clean up the allegations and conform to the evidence. Many of the changes also simply add more detail and factual allegations in support of the existing claims—an amendment is not required to include these details in the case, but neither is it prohibited.

St. Francis does not specifically object to most of the allegations. Consequently, the Court does not go through each and every proposed change, but instead addresses only the issues that St. Francis addresses.

## I. Changes to which St. Francis Agrees

The Second Amended Complaint drops the group boycott claims, to which St. Francis has no objection.

St. Francis also does not object to “separating the alleged torts relating to Caterpillar and Midwest Orthopaedic Center into distinct counts.” (D/e 175, p. 2. n.2). The First Amended Complaint alleged that St. Francis’ tactics dissuaded physicians from joining Peoria Day and from performing surgeries at Peoria Day, including a group of orthopedic surgeons at Midwest Orthopaedic Center. (*See* Amended Complaint ¶¶ 7(b), 38). Peoria Day asserts that the Second Amended Complaint “*clarifies* that the only investment group interfered with is Midwest Orthopaedic.” (d/e 169 ¶ 3)(emphasis in original). The Second Amended complaint adds allegations detailing St. Francis’ alleged tactics to dissuade Midwest Orthopaedics from investing in Peoria Day. (*See* Second Amended Complaint ¶¶ 5, 7(b), 70-76). The Second Amended Complaint also adds

a count for interference with prospective economic advantage with Midwest Orthopaedic.  (Second Amended Complaint p. 34, Count V).

Since there is no objection to these changes (except for the punitive damages sought in the state tort claims), the Court recommends that these changes be allowed.  The addition of punitive damages is addressed below.

## II. New Counts relating to Humana:  Interference with Contractual Relations and Interference with Prospective Economic Advantage (Counts VI and VII)("Humana Claims")

The deadline for amended pleadings was December 31, 2007. "Although leave to amend a complaint should be freely granted when just so requires, *see* Fed. R. Civ. P. 15(a), the district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. Bethany Pharmacal Co. v. QVC, Inc., 241 F3d 854, 860 (7th Cir. 2001), *citing* Foman v. Davis, 371 U.S. 178, 182 (1962).

St. Francis' interference with Peoria Day's contractual relations with Humana occurred in or around October 2008, about two years after Peoria Day filed this case.  The addition of the Humana claims is more a supplemental pleading under Fed. R. Civ. P. 15(d), as the new counts are

based on “transaction[s], occurrence[s], or event[s] that happened after the date of the pleading . . . .” Rule 15(d) provides that “the court may, on just terms,” permit a supplemental pleading. Rule 15(d) and Rule 15(a) are governed by the same standards. A supplemental pleading may be denied if there is “any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.” Foman v. Davis, 371 U.S. 178, 182 (1962)(Rule 15(a)); Glatt v. Chicago Park District, 87 F.3d 190, 194 (7th Cir.1996)(standard is the same under 15(a) and 15(d)).

> A supplemental pleading promotes as complete an adjudication of the dispute between the parties as possible. . . .It is a tool of “judicial economy and convenience,” *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir.1988), which serves to “avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted,” *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir.1963). Thus, when a supplemental pleading facilitates the efficient administration of justice, a court should allow it. *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226-27, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

Habitat Educ. Center, Inc. v. Kimbell, 250 F.R.D. 397, 401-02 (E.D. Wis. 2008); *see also* Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.,

125 F.3d 468, 480 (7th Cir. 1997)("The Federal Rules of Civil Procedure provide that courts should freely permit parties to amend their complaints, even after judgment, where there is no harm to the defendant.").

St. Francis first argues that the Humana claims are futile because Peoria Day has no evidence to support them. (d/e 175, p. 7). That argument belongs at summary judgment. The cases cited by St. Francis for the proposition that "[a]mending a Complaint proves futile if the new claims would not survive a motion for summary judgment" do not support that proposition in the procedural posture of this case. *See* U.S. ex real Fowler v. Caremark RX, L.L.C., 496 F.3d 730, 740 (7th Cir. 2007)(proposed amended complaint did not satisfy heightened pleading requirements of Fed. R. Civ. P. 9(b)); Sound of Music Co. v. Minnesota Min. & Mfg. Co., 477 F.3d 910, 923 (7th Cir. 2007)(case was already at summary judgment stage with developed factual record, enabling court to determine that amendment would be futile); Schor v. Daley, 563 F.Supp.2d 893, 904 (N.D. Ill. 2008)(leave to amend denied because of undue delay and futility; allegations clearly showed that no claim was stated).

St. Francis also argues that the Humana claims fail to state claims for relief. However, that argument is similarly based on the purported lack of

evidence to support the claims. The evidence attached to St. Francis' response should be part of a summary judgment motion, with an opportunity for Peoria Day to respond with its own evidence. Peoria Day's allegations give fair notice of its claims in the Humana Counts.

The strongest argument for denying these new counts is the potential for delay of the progression of this case. The trial is now set for October 5, 2009, and has already been rescheduled several times. If new claims are added whenever St. Francis allegedly engages in "new" anticompetitive tactics, this case could go on indefinitely. However, extensive discovery has already occurred on the Humana claims, and no party suggests that any more time for discovery is needed. According to St. Francis, "thousands of pages of documents" have been produced, as well as at least seven depositions. (d/e 175, p. 7). This seems more than sufficient discovery on the relatively straightforward Humana counts; no party asks for more time. Further, St. Francis' arguments demonstrate that it already has the evidence it needs to defend against the claims.

In the court's opinion, judicial economy is best served by dealing with the Humana claims now, rather than requiring Peoria Day to file a new case, which would only increase the time and resources spent by the

parties and the Court. The Court believes that allowing the claims will enable the just, efficient and complete resolution of the current disputes between the parties (to the extent possible). Accordingly, the Court recommends that the Humana counts be allowed.

## III. Addition of Punitive Damages to State Tort Claims (Counts III-VII, Second Amended Complaint)

The Second Amended Complaint adds allegations that St. Francis' tactics were willful and malicious, warranting punitive damages in the existing state tort counts involving Caterpillar and Midwest Orthopaedics. (Counts III-V). Punitive damages are also sought in the new counts involving Humana. (Counts VI and VII). St. Francis objects to all of the punitive damages additions on the grounds of undue delay and prejudice.

Seventh Circuit cases have upheld the denial of amendments to add punitive damages. *See* Winters v. Fru-Con Inc., 498 F.3d 734, 740-41 (7th Cir. 2007)(upholding denial of amendment adding punitive damages three years into litigation); Knapp v. Whitaker, 757 F.2d 827, 849 (7th Cir. 1985)(upholding denial of punitive damages claim where discovery was closed and pretrial order had been entered, and insurance policy did not cover awards for punitive damages).

One of the cases St. Francis cites, though, questions whether an amendment is necessary at all if a plaintiff decides to seek punitive damages.  Soltys v. Costello, 520 F.3d 737, 742-44 (7th Cir. 2008).  Soltys was a diversity suit in which the plaintiffs were seriously injured by a drunk driver.  After the final pretrial conference, the plaintiffs sought to amend their complaint to add a claim for punitive damages.  The district court denied the amendment, and the Seventh Circuit affirmed, holding that the district court had not abused its discretion in finding that the amendment was unduly delayed and would unduly delay the trial, which had already been postponed.  520 F.3d at 743.  The Court, however, questioned the assumption that punitive damages must be sought in the Complaint.  The Court noted the tension between Fed. R. Civ. P. 54(d), which "contemplates an award of punitive damages if the party deserves such relief–whether or not a claim for punitive damages appears in the complaint[]" and Fed. R. Civ. P. 9(g), which mandates that "item[s] of special damage" be set forth in the complaint.  520 F.3d at 742.  The Court noted that it had not yet "squarely addressed" the question, but also remarked that

> given our stance that "district courts should afford the prevailing party the relief to which it is entitled without regard to errors in

> the pleadings," . . . the fundamental legal error in this case may have been the parties' and the district court's shared assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages.

Id.

The parties do not address the dicta in Soltys, but it does not change the Court's recommendation regardless. In Soltys, the defendant admitted to and had been convicted of drunk driving. The availability of punitive damages was obvious from the allegations in the original complaint and would have been no surprise to the defendant in Soltys. The complaint in Soltys already stated a claim for punitive damages, even though they were not expressly sought. In contrast, here the availability of punitive damages from the allegations in the First Amended Complaint is far from obvious.

Thus, unlike the defendant in Soltys, St. Francis has not had notice, until now, that it might have to defend against punitive damages claims. Indeed, St. Francis asserts that "punitive damages could require additional fact discovery and expert opinions because OSF previously had no reason to confront and contest such claims." (d/e 175 p. 6). *See* Winters, 498 F.3d at 741 ("An amended complaint three years into the litigation affects the defendant's discovery and trial strategy and therefore the magistrate judge was reasonable in rejecting Winters' proposed amendment."). The

addition of the allegations of malice warranting punitive damages cast the claims in a different light, with higher stakes. St. Francis might well have approached discovery differently had it known earlier that punitive damages were sought in these counts.

Peoria Day does not adequately explain its delay in seeking punitive damages on the existing tort counts (Counts III-V). Contrary to Peoria Day's characterization, the Humana incident does not suddenly suggest the potential for punitive damages on the existing tort claims. The existing tort claims are based on the same conduct set forth in the First Amended Complaint filed in November 2007, well over a year ago. The previously allowed re-opening of discovery on the Humana claims does not affect the timeliness of amendments to claims upon which discovery already closed.

In sum, the Court believes that Peoria Day unduly delayed bringing its claims for punitive damages on all counts. Allowing punitive damages claims at this point would unduly prejudice St. Francis' defense unless more discovery is allowed, which would unduly delay the progression of this case. The Court therefore recommends that the addition of claims for punitive damages in all counts be denied.

**IV. Change of Tying Theory and Relevant Geographic Market**

In the antitrust claims, the Second Amended Complaint narrows the relevant geographic market from the "Peoria Area" ("no larger than Peoria, Tazewell, and Woodford counties") to the "area covered by the three-digit zip code 616" in Peoria. (Redline copy of Second Amended Complaint, d/e 175, Ex. 1, ¶ 19). St. Francis objects to this change on the grounds of undue delay. St. Francis asserts that Peoria Day should not be allowed to amend its Complaint to conform to its expert's opinion, and argues that the evidence cuts against narrowing the market.

"'[T]he Federal Rules of Civil Procedure create [a system] in which the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence.'" Winger v. Winger, 82 F.3d 140, 144 (7th Cir. 1996), *quoting* Duckworth v. Franzen, 780 F.2d 645, 649 (7th Cir.1985). Fed. R. Civ. P. 15(b) applies to amendments during and after trial, but its intent is instructive for pre-trial amendments as well. *See* Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998)(new theory of relief addressed in summary judgment constructively amended complaint); Walton v. Jennings Community Hosp.Inc. 875 F.2d 1317, 1320 n. 3 ("Rule 15(b) of the Federal Rules of Civil Procedure, . . . allows great latitude in

amending complaints to conform with subsequent changes as the case develops . . . .")(district court constructively amended pleadings by addressing merits of tort claim and treating claim as part of case); Umar v. Johnson, 173 F.R.D. 494, 503 (N.D. Ill. 1997)(amendment allowed "'as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant.'")(quoted cite omitted). Formal amendment of a pleading is required only if a party objects and the issues are outside the scope of the pleadings. *See* Winger, 82 F.3d at 144. "Indeed, nothing in federal procedure compels a plaintiff to amend the complaint as discovery unfolds." Umar, 173 F.R.D. at 503, *citing* Ash v. Wallenmeyer, 879 F.2d 272, 274 (7th Cir. 1989)("[F]ederal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process. The information is to be reflected in the framing of issues in the pretrial order, which supersedes the complaint").

In the Court's opinion, the above precedent demonstrates that Peoria Day does not even need to amend its complaint to argue that the geographic market is narrower. That argument is consonant with the developments in discovery (which includes expert discovery) and could be made at summary judgment even without amendment. Its inclusion in the

Second Amended Complaint thus works no prejudice to St. Francis, and actually helps clarify the issues that will be addressed on summary judgment or at trial.

St. Francis also argues that the Complaint untimely and unfairly changes its tying theory to a "bundling equals tying" theory. Yet Peoria Day has always maintained that St. Francis conditioned its discounts on in-patient services with the provision of partially-exclusive ambulatory services. The "bundling equals tying" theory is consistent with Peoria Day's allegations from the start. To the extent it does represent a new theory, Peoria Day did not need to amend its Complaint to assert it, for the reasons discussed above. Thus, the Court finds nothing objectionable in the narrowing of the relevant geographic market or the "bundling equals tying" theory set forth in the Second Amended Complaint.

**V.     Addition of "Humana-Related Facts" to Antitrust Tying Claims**

St. Francis asserts that, "[a]s Peoria Day has structured the Second Amended Complaint, the allegations relating to Humana would be incorporated in Counts I and II" (the antitrust tying claims). St. Francis objects on the grounds that the Humana allegations have nothing to do with the tying claims involving Caterpillar health plans. Peoria Day does

not specifically address this, but does assert that the Humana allegations are relevant to proving malice, intent and also go to the credibility of witnesses. (d/e 169, ¶ 17).

The Court agrees with St. Francis that the Humana allegations are separate from the antitrust tying counts. The Court believes it is necessary to excise out the Humana allegations, which are incorporated in the antitrust counts only by the standard boilerplate reference. (Second Amended Complaint, ¶¶ 84, 90—"Peoria Day incorporates its allegations in paragraphs 1-83 as if fully stated herein.").

WHEREFORE, the Court RECOMMENDS that Peoria Day's Motion for Leave to File Second Amended Complaint be GRANTED in part and DENIED in part (d/e 169). The Court recommends that the motion be denied to the extent it seeks to add punitive damages to the Second Amended Complaint and that it be denied to the extent that the Humana allegations be excised from the antitrust tying counts. The Court recommends that the motion otherwise be granted.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).

Failure to timely object will constitute a waiver of objections on appeal.

Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

ENTER: March 27, 2009

*s/ Byron G. Cudmore*

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE