# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| PEORIA DAY SURGERY CENTER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06-1236 |
| OSF HEALTHCARE SYSTEM, an Illinois not-for-profit corporation, d/b/a SAINT FRANCIS MEDICAL CENTER, | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion to Exclude from Evidence the Expert Opinions, Reports and Testimony of Dr. William J. Lynk [#170] and Defendant's Response [#175]. For the reasons set forth below, the Court DENIES Plaintiff's Motion [#170].

## BACKGROUND

Plaintiff Peoria Day Surgery Center ("Peoria Day") is an outpatient surgical center providing ambulatory surgeries. Defendant OSF Healthcare System d/b/a St. Francis Medical Center ("St. Francis") is one of the largest hospitals in the Peoria area and is the largest provider of ambulatory surgeries in the Peoria area. In its Second Amended Complaint, Peoria Day alleges that St. Francis's conduct resulted in violations of U.S. and Illinois antitrust laws and state law claims, ultimately creating significant barriers to entry of their outpatient ambulatory surgery.

A central issue in this litigation is determining the relevant geographic market. St. Francis retained the services of Dr. William Lynk to assist in determining the relevant geographic market. Using his patient origin/ destination method, Dr. Lynk concluded that the relevant market area encompasses 14 counties in and around the city of Peoria. While there is no dispute as to Dr. Lynk's qualifications or resume, Peoria Day moves to exclude from evidence Dr. Lynk's expert reports and testimony, arguing that his methodology for determining relevant geographic market is unreliable, arbitrary, outcome-oriented, and does not conform with any generally accepted scientific theory or method for defining a relevant geographic market.

## DISCUSSION

The Court's role in determining the admissibility of expert testimony is that of a gatekeeper. *General Electric Co. v. Joiner,* 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). In performing this role, the Court must determine whether the expert testimony in question meets two essential requirements: (1) it must be based on scientific, technical, or other specialized knowledge and (2) it must assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert,* 509 U.S. at 592; Fed.R.Evid. 702. The court's gatekeeping function focuses on an examination of the expert's methodology; the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact. See *Daubert*, 509 U.S. at 595, *Smith v. Ford Motor Company*, 215 F.3d 713, 719 (7th Cir. 2000).

There are four factors that the Court looks to in determining whether expert testimony is admissible: (1) whether [the expert's theory] can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance among the relevant community of specialized expertise. *See Daubert*, 509 U.S. at 593-94.

St. Francis argues that Dr. Lynk's opinions meet the relevant standard of admissibility.  St. Francis contends that his methodology, which first determines the service area, or the geographic range over which St. Francis attracts the substantial majority of its inpatient hospital business (90%), is consistent with the methodology adopted by other courts, including the courts in *Tampa Electric v. Nashville Coal,* 365 U.S. 320, 327-334 (1961) and *Little Rock Cardiology Clinic v. Baptist Health,* 573 F. Supp. 2d 1125,1148 (E.D. Ar. 2008).  Further, St. Francis argues that other courts have accepted Dr. Lynk's opinions, and that his methodology was even considered "more economically sound" than that of the opposing economist. *FTC v. Freeman Hosp.,* 69 F.3d 260, 269-71 (8th Cir. 1995).  In addition, St. Francis contends that methodologies that are the same or similar to Dr. Lynk's have been used, approved, or recommended by numerous economics and healthcare publications.  For example, in the American Bar Association Section of Antitrust Law's *Health Care Merger and Acquisition Handbook* (2003) titled "Geographic Market Issues in Hospital Mergers," the authors noted that "[m]ost economists rely heavily on price information and/or shipment information (e.g. patient origin data) to identify the relevant geographic market."  The article further stated "[t]he basic justification for using patient origin data is that the choices made by patients reflect both their willingness to travel and their response to

relative to price and quality conditions. That is, these data reveal how patients currently respond to economic conditions across space."

The Court notes that much of Peoria Day's brief in support of its Motion to Exclude focuses on the argument that Dr. Lynk used the "outmoded and unreliable" Eliza-Hogarty method and that he used this method incorrectly. St. Francis denies that Dr. Lynk used this method and Dr. Lynk denied using this method in his deposition. After reviewing the similarities and differences between these two methodologies, the Court is not convinced that Dr. Lynk solely relied on the Eliza-Hogarty method to determine the relevant geographic market. Therefore, the Court does not find Peoria Day's argument pertaining to the Eliza-Hogarty method to be persuasive.

While the Court acknowledges that the parties dispute what encompasses the relevant geographic scope, the Court does not find that Dr. Lynk's methodology is so flawed as to warrant the barring of his opinion or that a full *Daubert* hearing is necessary. Further, the Court finds that any challenge to Dr. Lynk's methodology is best left to cross-examination and possible impeachment. Therefore, the Court denies Peoria Day's Motion to exclude Dr. Lynk's opinions, reports and testimony. This ruling does not reflect any view by the Court at this time as to what the proper relevant geographic market is for this case.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion [#170].

ENTERED this 28th day of April, 2009.

                                            s/ Michael M. Mihm
                                            Michael M. Mihm
                                            United States District Judge